And that's case number 19-1062. We're ready when you are, Mr. Doar. Good morning, Your Honors. May it please the Court, Jeremy DeRay for Appellants. I'm here today, we're here today, the claims stand rejected, we're here today on the appeal of a Board Affirmance of an Eligibility Rejection of the Claims as directed to the abstract idea of facilitating cash transactions without the need for a customer to receive coins as change due from a cash purchase. The Appellants have three major concerns they want to highlight today. The first concern is the Appellants are not sure that this identified idea falls within or that the abstract idea's eligibility exception should be construed so broadly as to encompass this identified idea. But what would you say that the claims are directed to? It's a great question. I mean, I think what we would agree, and so I would say it's uncontested, I think the Appellants in the office agree, the claims are definitely designed to achieve the result of facilitating cash transactions without the need for a customer to receive coins. And that's not abstract? That's not an abstract idea? Well, I think it can definitely be characterized as abstract at some level, and we're actually okay with just moving on and arguing at step two if you want. But we're not entirely sure that the implicit judicial exception for abstract ideas should be construed so broadly as to encompass everything which can be characterized as abstract at some level. The Supreme Court in Alice was careful to note that it hasn't really defined the claim. Sure, we're not supposed to read the claims that are really broad level because you can do that and say everything's abstract at some broad level because it has an idea behind it. But your claims have to be directed at something that's more specific and not at that broad level. What are your claims directed at in a specific way that's not that abstract idea? Got it. And I think here what we'd say is we have an unconventional combination of steps that we think recites a specific way of implementing this abstract idea that represents a... You really are relying on step two. Yes. Yeah, yeah. Our step... You concede step one. We're not conceding step one, but I think it's going to be more... Well, you're not conceding it, but you have yet to articulate what the claims are directed to that's not an abstract idea. If we are not contesting... Here's what I would say, and I apologize for any confusion on this. We are not going to contest the patent office's assertion that the claims are directed to facilitating cash transactions without the need for a customer to receive coins as change due from a cash purchase. To the extent that we're making a step one argument, it's just asking this court to consider is this an abstract idea within the meaning of the abstract idea's eligibility exception. It may well be that this court concludes... Well, what we're doing is we're reviewing the decision, the final written decision of the board. Why are they wrong when they found that that's what the claims are directed to, and that that's an abstract idea? Well, I think that they're wrong when they find that that's an abstract idea, because I think that that's very different and more specific than the types of things that the Supreme Court has looked at and identified as an abstract idea. In Alice and Bilski, they looked at fundamental economic concepts and longstanding practice. Here, there's no real... It's not clear that this is being done at all, or that this idea of facilitating cash transactions without the need for a customer to receive coins as change due is a fundamental or longstanding economic practice or a building block. I think... But the patent says it. The patent says this is a big problem in commerce, that somebody purchases something and they get coins back. And these coins are heavy, and they're in your pocket, and you lose them. Or you leave them there in the little tray at the supermarket, or they throw them away, and coins are a hassle. And this patent does away with that hassle. Yes, that's what it's trying to do. And what we would say is, so consider some sort of software invention or networking invention where you're eliminating the need for electronic transactions. You're improving the efficiency of a network or a system where you're eliminating the need for electronic transactions. It would seem strange if that's sufficient to connote patent eligibility or to move it outside of the abstract ideas eligibility exception. But something that eliminates the need for a physical transfer of coins isn't enough to remove it from the abstract ideas eligibility exception. In other words, we're not obviating the need for... Well, the first one's not eligible either, unless it's more than just the abstract idea of getting rid of something in whatever you were talking about. It's got to be specific enough and directed to a specific technological advance rather than the more general idea that you just stated. So I'm not sure how that example helps you say that this is not similar when this is also directed at a very high-level idea of a way of processing a financial transaction using cash. My apologies, Your Honor, because I wasn't clear. You don't have to apologize, but it's not a very helpful answer to say, well, this other set of things would clearly be eligible when the way you stated it seemed clearly ineligible. And I wasn't intending to say that it would clearly be eligible. What I was intending to say was that's the type of thing that might demonstrate an improvement in computer or network functionality. And so it was just kind of analogizing it to if you're eliminating the need for network transactions or network communications, that might be an improvement in computer functionality. Here, you would be eliminating the need for physical. Is your point that the invention improves the commercial exchange? I mean, I think that's what you're trying to say. If you're trying to identify what the system is that you're improving. I think that it improves the efficiency of a retail transaction. But I don't think at this point that it's really productive to focus on the Step 1 inquiry. I think I would like to move on to Step 2, if that's okay. Yes, please do. Okay. So in Step 2, I want to focus on what was actually uncontested. What's uncontested is that the claim recites an electronically implemented method which achieves the result that's this identified abstract idea of facilitating cash transactions without the need for a customer to retrieve coins as change do. We think that it's uncontested that this claim actually includes an unconventional combination of steps reciting a specific way of achieving this result. And in particular, this is debiting a tracking fee. What do you mean by uncontested? That the BTO is not challenging that argument? That is what I would say. I mean, so we have made that argument repeatedly. And for example, in the opening brief, we said that we noted that the board did not seem to dispute that these steps were unconventional. And the solicitor appeared to confirm this and never really – they acknowledged the argument. And so here I'm citing from the brief for the director at page – at page 15 where they said – they acknowledged the argument that we said that Claim 1 uses an unconventional combination of steps to provide a specific or practical way of achieving the desired result of facilitating cash transactions without customers receiving change in coins. But they never really suggested that it was conventional. They simply alleged that the problem is that the combination of steps itself is the abstract idea. And I ask you some – I understand your point. But just a different little minor question that I have about this, which is, you know, reading this specification, I wasn't able to see what the advantage was or what the reason why was for why you have this tracking fee where I guess you move the money here and then you move it back here. And I'm just trying to understand what is – there are some extra steps that are being performed here with this tracking fee and then debiting later. What is the purpose of that? I think I would – I think my understanding is that if payment networks and point-of-sale terminals were set up to easily return money, in other words, credit money to someone's debit card or something like that and not in a return or that type of thing, there might be no need for this type of step. But as it is, this is a way to work within conventional technology, conventional point-of-sale terminals, conventional payment networks and still find a creative way, an innovative way to accomplish the desired result, which is facilitating cash transactions without the need for a customer to receive coins as change due from a purchase. Did you learn that from the specification? No. How am I supposed to know that from the specification? Well, I would say that it's an unconventional combination of steps that achieves the result. I mean, what you're talking about sounds pretty good, you know, doesn't it? Yeah, in terms of why. I mean, like, this is the only way that it could be implemented on the system that exists, but there's absolutely nothing in the specification that talks about that. And certainly, we would wish that it was in the specification. But I think that it still remains an unconventional combination of steps that achieves this result. And I think that the issue we have with the board's decision is that the board, rather than considering it, and they seem to acknowledge that it's unconventional, but rather than considering that, they just ignored the steps. They thought that they could just ignore the steps as part of the abstract idea. And we don't think that's appropriate. I mean, this... But the steps are part of the abstract idea that whether they're arranged in conventional ways or not, they're still all abstract. Doesn't that make it ineligible? Well, I think that what we would say is that... I mean, in step two, you can't go back to the abstract idea. You have to show something outside of the abstract idea that makes it whatever the phrasing is, unconventional and the like. That makes perfect sense. I think that what we would say is two things, two major points. The first point would be that, and I'm quoting from interval licensing here, this court's recent abstract idea exception decisions have stressed that a claim dimension must embody  from one claiming only a result to one claiming a way of achieving it. And I think that here, we're actually reciting a way of specifically achieving this identified result that's been alleged to be the abstract idea. We're not just claiming it in the abstract. And I think that in our brief, we look at the cases of Wyeth v. Stone and O'Reilly v. Morse, which the court in interval licensing actually compared to as well. The court said that in both Wyeth and Morse, the inventors received a patent containing at least one claim directed to a particular technical solution to a problem, whether for cutting ice or for printing at a distance using electromagnetism. But each inventor also lost a claim that encompassed all solutions for achieving a desired result. Counselor, you're into your rebuttal time. Do you want to go on, or you can reserve your time? I'm going to keep going for another minute or so. I understand. Thank you. So I think that here, that's exactly what we do. And we have a specific way of achieving that result. The other thing I would say is that, although in Berkheimer, this court indicated that the second step of the Alice test is satisfied when the claim limitations involve more than performance of well-understood routine and conventional activities previously known in the industry, we would actually go a step further. And here, we believe that these unconventional steps are actually inventive over this identified abstract idea. In other words, even if you assume that the identified idea of facilitating cash transactions without the need for a customer to receive coins as change due from a cash purchase is old and known, we believe that the unconventional combination of steps here is actually non-obvious over this idea, inventive over this idea. Notably, this is the analysis the Supreme Court used in Parker v. Fluke, where the court indicated that the discovery of a phenomenon cannot support a patent unless there is some other inventive concept in its application. The court in Fluke outlined its reasoning, saying that the claimed process is unpatentable under Section 101. And here, I'm quoting from Fluke at 590. Counselor, I suggest you save your time for rebuttal. We got the essence of your argument. Okay, thank you. Counselor Nielsen? Good morning. May it please the court. This case, or the board here, engaged in a straightforward application of the Alice II step framework in determining that the claimed invention is patent ineligible. If you look to the claims, there are essentially three steps. There's tendering cash. There's debiting. And there's crediting. And what the board determined is that those are fundamental economic practices, that debiting and crediting are building blocks of banking, that this is effectively that the claim is to a method of organizing human activity, and therefore abstract. And that's step two, the additional limitations, which are simply a processor, a credit, and debit. Do you understand how this actually would work? I mean, there must be some way to connect the purchaser to some account somewhere that's going to get debited and credited for the change. Correct. Or they're going to get credit for the change. Does the specification explain how it's going to work? Well, it sounds like, at least from the picture, that the purchaser comes with their cash and their card in hand. They have some sort of a card that is then used. And then there's some kind of debiting. It seemed as though the debiting and crediting is just for that particular merchant. But it wasn't entirely completely clear to me. What about from the claims themselves? From the claims, it seems that the first transaction is this debiting of this tracking fee, which is equal to whatever that change, coin change, due, and then credits twice as much. So it sort of debits that amount and then credits twice amount. I don't know if that's some way to make sure or to verify that it's correct. I mean, I have no idea. It's not clear from the specification why they do it that way. But that's what they do. So Purpose's counsel says that the board has admitted that these extra steps that we're talking about here of this extra crediting of the tracking fee and then the later debiting of it, that those are unconventional. Do you agree with that? I think what he quoted from there was actually our quotation or our summary paraphrasing of their argument in the brief at page 15. There was no finding by the examiner that this was obvious or novel. The examiner did not find it to be anticipated or obvious based on the prior part. However, this court and the Supreme Court has been very clear, both in Fluke and in Affinity Labs, which we cite in our brief, that the novelty or non-obviousness of an abstract idea doesn't render it any less abstract. And they seem to focus, Primus seems to focus very much on actually this order of steps or the particular amounts of crediting and debiting. And the board rightly said that that doesn't change. Those particulars of the abstract idea, and that's at page 6 and at 12 to 13 in the rehearing decision, doesn't render it any less abstract. And I would point this court to the recent trading technologies. I know there's been a lot of trading technologies decisions recently. The particular one that issued after our brief came in, it's at 921F3, 1084, and the Penn site is 1092, where it says that the fact that the claims add a degree of particularity, in that case it was as to how an order is placed, did not impact our analysis of step one. It cites the ultra-mercial, but says something very similar. Although certain additional limitations add a degree of particularity, the concept embodied by the majority of limitations describes only the abstract idea. I think that's exactly what we have here. Yes, we may have a certain variation in just the debiting and crediting, but at bottom, those are fundamental economic practices and they are abstract. And once you move to step two, all that's left are those generic computer components and the board looked at those individually and as an ordered combination and determined that they were not sufficient to transform the abstract idea into a patent-eligible invention. If you don't have any further questions, I'm happy to see the remainder of my time. Thank you very much. Mr. Doherty, you have three minutes. Thank you, Your Honors. I want to use this remaining time to emphasize that there's a combination of steps that we believe is unconventional, that we have repeatedly asserted is unconventional, and that the office has never contested is not unconventional. Again, we're not even just relying on that. We also would go a step further and say that we believe that these steps are actually inventive over the identified abstract idea itself. There's at least some indication that the patent office may agree. As the solicitor noted, there is no rejection of this claim for novelty or non-obviousness. And not only that, but if the office has found that this claim is non-obvious, it satisfies the Hotchkiss condition for patentable invention. But the office has also alleged that this identified abstract idea is in long-standing use. And it's clear that this identified abstract idea, this result, can't be what conveys the non-obvious properties to this claim. There has to be something left. We would contend, and we suggest, and it's been our position the whole time, that it's this non-obvious, or it's this unconventional combination of elements that recites a specific way of achieving this identified result that Dave alleges is an abstract idea that represents the inventiveness in this claim. That, yes, it may be simple, and, yes, it may be something that seems like it's a simple innovation or a simple invention, but it's not contested that it's unconventional. It's not contested that it's not inventive. We believe that that's an inventive concept. Okay. You want to conclude? Yes. Thank you. Are there any questions? Thank you.